UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
CASE NO. 22-10894-GG


EMPIRE INDEMNITY INSURANCE COMPANY

*Defendant/Appellant*,

v.

CREEKSIDE CROSSING CONDOMINIUM ASSOCIATION, INC.,

*Plaintiff/Appellee*.

---

**CORRECTED[1] BRIEF OF APPELLANT
EMPIRE INDEMNITY INSURANCE COMPANY**

---

On Appeal from the
United States District Court for the Middle District of Florida
No. 2:20-cv-136-FtM-66MRM

BUTLER WEIHMULLER KATZ
CRAIG LLP

J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
CHRISTIAN LEE GONZÁLEZ-RIVERA, ESQ.
Florida Bar No.: 1020707
cgonzalez-rivera@butler.lega1
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:  (813) 281-1900
Facsimile:  (813) 281-0900

*Counsel for Empire Indemnity Insurance Company*

---

[1] For formatting and other revisions.

Empire Indemnity Insurance Company v. Creekside Crossing Condo. Assn., Inc.
Case No. 22-10894

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rules of Appellate Procedure 26.1 and 28(a)(1), and 11th Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant, Empire Indemnity Insurance Company, files this Certificate of Interested Persons and Corporate Disclosure Statement. The following is a full and complete list of all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal.

1. Butler Weihmuller Katz Craig LLP – Counsel for Appellant

2. J. Pablo Caceres – Appellate Counsel for Appellant

3. Christian Lee González-Rivera – Appellate Counsel for Appellant

4. Empire Indemnity Insurance Company – Appellant

5. Creekside Crossing Condominium Association, Inc.–Appellee

6. Becker & Poliakoff – Counsel for Appellee

7. Sanjay Kurian – Counsel for Appellee

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

Empire Indemnity Insurance Company v. Creekside Crossing Condo. Assn., Inc.
Case No. 22-10894

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1-1, Appellant, Empire Indemnity Insurance Company, makes the following Corporate Disclosure:

Empire Indemnity Insurance Company is a wholly owned subsidiary of Empire Fire and Marine Insurance Company, an Illinois corporation. Empire Fire and Marine Insurance Company is a subsidiary of Zurich American Insurance Company, a New York corporation. Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware corporation. Zurich Holding Company of America, Inc. is wholly owned by Zurich Insurance Company Ltd., a Swiss corporation. Zurich Insurance Company Ltd. is directly owned by Zurich Insurance Group Ltd., a Swiss corporation. Zurich Insurance Group Ltd. is the only publicly traded parent company, with a listing on the Swiss stock exchange, and a further trading of American Depositary Receipts (Stock Ticker: ZURVY).

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues are of first impression and their resolution impacts the enforcement of insurance appraisal provisions state and circuit-wide, Empire requests oral argument to assist the Court under Fed. R. App. P. 34(a)(1) and 11th Cir. R. 28-1(c).

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT .....................................................C-2

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS ......................................................................... iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE

JURISDICTION...................................................................... xxiii

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE....................................................................3

I.      Introduction....................................................................3

II.     Historical and Legal Background....................................................4

        A.      Growth of Procedural Disarray in Compelling Appraisal ...................4

        B.      The Novel Process Defies Historical Practice ......................................9

III.    Factual and Procedural Background............................................14

        A.      The Property and the Policy ...................................................14

        B.      Empire Investigates and Adjusts the Claim ........................................15

        C.      Creekside Sues Empire.......................................................17

STATEMENT OF THE STANDARD AND SCOPE OF REVIEW ......................20

SUMMARY OF THE ARGUMENT .....................................................22

ARGUMENT ...................................................................................................23

I.     Compelling Appraisal without a Showing of Specific Performance

       under Rule 65 was Procedurally Improper....................................................23

II.    Compelling Appraisal Absent Summary Judgment that Empire

       Breached the Provision Constituted a Grant of Unpled Relief

       Redressing an Un-adjudicated Wrong...........................................................35

III.   The District Court Refused Imparting Guidelines for Appraisal Based

       on the Erroneous Legal Conclusion that It Lacked Such Discretion ...........39

CONCLUSION ...............................................................................................51

CERTIFICATE OF COMPLIANCE ........................................................................52

CERTIFICATE OF SERVICE ...............................................................................53

# TABLE OF CITATIONS

## Cases

*ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*,

   No. 18-CV-60562, 2018 WL 6267943 (S.D. Fla. Nov. 30, 2018)......... 44, 45

*Alabama v. U.S. Army Corps of Engineers*,

   424 F.3d 1117 (11th Cir. 2005) ....................................................................39

*Allegro at Boynton Beach, L.L.C. v. Pearson*,

   287 So. 3d 592 (Fla. 4th DCA 2019).............................................................36

*Allen v. Amica Mutual Ins. Co.*,

   No. 1:12-cv-49, 2013 WL 11927705 (N.D. Ga. Feb. 28, 2013) ...................50

*Allen v. USAA Cas. Ins. Co.*,

   790 F.3d 1274 (11th Cir. 2015) ....................................................................47

*Allstate Insurance Company v. Suarez*,

   833 So. 2d 762 (Fla. 2002) .............................................................. 6, 9, 12, 29

*Am. Storage Centers v. Safeco Ins. Co. of Am.*,

   651 F.Supp.2d 718 (N.D. Ohio 2009) ...........................................................42

*American Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo.*

   *Ass'n, Inc.*,

   306 So. 3d 1238 (Fla. 2d DCA 2020)............................................................30

*Anderson v. Auto-Owners Ins. Co.*,

   172 F.3d 767 (11th Cir. 1999) ......................................................................32

iv

*Auto-Owners Ins. Co. v. Anderson*,

    756 So. 2d 29 (Fla. 2000) ............................................................32

*Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*,

    129 F.Supp.3d 1150 (D. Colo. 2015) ..................................... 42, 48

*Baldwin Realty Grp. Inc. v. Scottsdale Ins. Co.*,

    No. 6:18-cv-785, 2018 WL 4381206 (M.D. Fla. Sept. 6, 2018)..................45

*Battles, Inc. v. Nationwide General Ins. Co.*,

    No. 3:19-cv-13-DML-DCP, 2020 WL 6365513 (E.D. Tenn. March

    10, 2020) ..................................................................... 13, 25, 27, 37

*Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins. Corp.*,

    2013 WL 2646828 (S.D. Fla. June 12, 2013)...........................................7, 24

*Blue-Grace Logistics LLC v. Fahey*,

    340 F.R.D. 460 (M.D. Fla. 2022) ..................................................34

Bonafonte v. Lexington Ins. Co.,

    No. 08-cv-21062-CIV, 2008 WL 2705437 (S.D. Fla. July 9, 2008).............45

*Buckley Towers Condo., Inc. v. QBE Ins. Corp.*,

    395 Fed. App'x 659 (11th Cir. 2010) ...........................................49

*Burchell v. Marsh*,

    58 U.S. 344 (1854).........................................................................41

*Burgess v. Miller*,

    492 F.Supp. 1284 (N.D. Fla. 1980) .................................................................41

*Cedant Corp. v. Forbes*,

    70 F.Supp.2d 339 (S.D.N.Y. 1999) ....................................................... 10, 31

*Chambers v. Nasco, Inc.*,

    501 U.S. 32 (1991)..........................................................................................40

*CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.,*

    110 F.Supp.2d 259 (D. Del. 2000) .................................................................42

*Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*,

    5 So. 3d 709 (Fla. 3d DCA 2009)..................................................... 13, 29, 30

*Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*,

    117 So. 3d 1226 (Fla. 3d DCA 2013)......................................... 29, 30, 35, 38

*City of Omaha v. Omaha Water Co.*,

    218 U.S. 180 (1910)........................................................................................29

*Collins v. Collins*,

    53 Eng. Rep. 916 (1858) (same).....................................................................29

*Columbia Cas. Co. v. Southern Flapjacks, Inc.*,

    868 F.2d 1217 (11th Cir. 1989) .....................................................................29

*Compare Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-00136, 2020 WL 5973177 (M.D. Fla. Sept. 2, 2020)................8

vi

*Coral Reef Metro, LLC v. Scottsdale Ins. Co.*,

    No. 2:18-cv-460, 2019 WL 721286 (M.D. Fla. Jan. 30, 2019)....................44

*Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-00136, 2021 WL 2003007

(M.D. Fla. May 19, 2021) ....................................................................... 8, 24, 26, 37

*Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 19-80959-civ, 2022 WL 873998 (S.D. Fla. Mar. 24, 2022)..................49

*Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-136, 2022 WL 780950 (M.D. Fla. Mar. 15, 2022) .................37

*Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*,

    No. 10-61987, 2013 WL 1191413 (S.D. Fla. Mar. 22, 2013).....................36

*Diamond Lake Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:19-cv-547, 2021 WL 6118076 (M.D. Fla. Dec. 27, 2021).................49

*Evanston Ins. Co. v. Cogswell Properties, LLC*,

    683 F.3d 684 (6th Cir. 2012) ......................................................................12

*Executive Plaza, LLC v. Peerless Ins. Co.*,

    No. 09-1976, 2010 WL 11632677 (E.D. N.Y. Feb. 8, 2010).......................49

*Federal Ins. Co. v. Anderson*,

    No. 18-cv-06920, 2019 WL 8128570, at *6 (N.D. Cal. Sept. 27, 2019) ......46

*Ferrero v. Assoc. Materials Inc.*,

    923 F.2d 1441 (11th Cir. 1991) ..................................................................9, 25

*Fireman's Fund Ins. Co. v. Steele Street Limited II*,

    2022 WL 39392 (10th Cir. Jan. 5, 2022)................................................. 20, 26

*Fla. Gaming Corp. v. Affiliated FM Ins. Co.*,

    2008 WL 11407210 (S.D. Fla. Apr. 21, 2008).........................................8, 30

*Fla. Ins. Guaranty Ass'n v. Olympus Ass'n*,

    34 So.3d 791 (Fla. 4th DCA 2010)........................................................ 29, 30

*Ford v. American Security Ins. Co.*,

    No. 1:19-cv-20223-JLK, 2019 WL 6609239 (S.D. Fla. Dec. 5, 2019).........50

*Fouladi v. Geovera Specialty Ins. Co.*,

    No. 6:18-cv-326-Orl-40KRS, 2018 WL 3761039 (M.D. Fla. April 30,

    2018) ..........................................................................................................30

*Gauche v. London & L. Ins. Co.*,

    10 F. 347 (E.D. La. 1881)...........................................................................10

*Georgia Advocacy Office v. Jackson*,

    4 F.4th 1200 (11th Cir. 2021) ................................................................. 34, 40

*Great Lakes Ins. SE v. Concourse Plaza, A Condo. Ass'n, Inc.*,

    No. 21-cv-21873, 2022 WL 1681883 (S.D. Fla. May 26, 2022) ..................36

*Grove Towers Condo. Ass'n, Inc. v. Lexington Ins. Co.*,

    No. 19-24199-Civ-Cooke/Goodman, 2020 WL 4561599 (S.D. Fla.

    June 9, 2020)......................................................................................30

*Hale v. Johnson,*

    845 F.3d 224 (6th Cir. 2016) .........................................................28

*Hanover Fire Ins. Co. v. Lewis*,

    28 Fla. 209 (Fla. 1891) ..................................................... 10, 32, 41

*Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*,

    1 N.Y.2d 534 (N.Y. 1956)..............................................................11

*Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*,

    284 U.S. 151 (1931)........................................................................41

*Harris v. Equifax Information Services, LLC,*

    No. 8:20-cv-1770, 2020 WL 6545977 (M.D. Fla. Nov. 6, 2020) ................44

*Hayes v. Allstate Ins. Co.*,

    722 F.2d 1332 (7th Cir. 1983) ......................................... 20, 25, 26

*Hepburn et al. v. Auld. et al*.,

    5 Cranch 262 (1809) ...................................................................9, 31

*Holmes v. Richet,*

    56 Cal. 307, 313 (Cal. 1880) .........................................................10

*Hozlock v. Donegal Companies/Donegal Mut. Ins. Co.*,

    745 A.2d 1261 (Pa. Super. Ct. 2000) ............................................................41

*Indian Harbor Insurance Company v. International Studio Apartments, Inc.*,

    No. 09-60671-CIV-ALTONAGA/Brown, 2009 WL 10668754 (S.D.

    Fla. Sept. 22, 2009).......................................................................... 36, 37, 38

*Intervest Constr. Of Jax, Inc. v. Gen. Fid. Ins. Co.*,

    133 So. 3d 494 (Fla. 2014) ............................................................................44

*Itasca Paper Co. v. Niagara Fire Ins. Co.*,

    220 N.W. 425 (Minn. 1928) .........................................................................41

*J.P.F.D. Investment Corporation v. United Specialty Ins. Co.*,

    769 Fed. App'x 698 (11th Cir. 2019)................................................ 20, 28, 34

*J.W. Mariner Corp. v. Zurich American Ins. Co.*,

    No. 5:20-cv-143, 2021 WL 4958099 (N.D. Fla. July 7, 2021) ....................36

*Jacobs v. Nationwide Mut. Fire Ins. Co.*,

    236 F.3d 1282 (11th Cir. 2001) .............................................................. 20, 35

*Jin Zhi Star Lt. LLC v. American Zurich Ins. Co.*,

    No. 08-61101-Civ-Moreno/Torres, 2011 WL 13110260 (S.D. Fla.

    June 16, 2011).................................................................................................30

*JM Walker LLC v. Acadia Ins. Co.*,

    356 Fed. App'x 744 (5th Cir. 2009) ..............................................................21

x

*Johnson v. Nationwide Mut. Ins. Co.*,

    828 So. 2d 1021 (Fla. 2002) ............................................................................6

*Jossfolk v. United Property & Cas. Ins. Co.*,

    110 So. 3d 110 (Fla. 4th DCA 2013)...........................................................49

*La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*,

    733 F.Supp.2d 1332 (S.D. Fla. 2010)...........................................................24

*Liberty American Ins. Co. v. Kennedy*,

    890 So. 2d 539 (Fla. 2d DCA 2005)................................................. 8, 30, 35

*Macom Technology Solutions Holdings, Inc. v. Ifineon Technologies AG*,

    881 F.3d 1323 (Fed. Cir. 2018) ....................................................................35

*Mapleton Processing, Inc. v. Society Ins. Co.*,

    No. C12-4083-LTS, 2013 WL 3467190 (N.D. Iowa July 10, 2013) .... 13, 25, 28, 37

*Marbella at Spanish Wells 1 Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:21-cv-641, 2022 WL 1302328, (M.D. Fla. May 2, 2022)....................7

*MaxLite, Inc. v. ATG Electronics, Inc.*,

    No. 15-1116, 2019 WL 3283077 (D. N.J. July 22, 2019)............................33

*McCoy v. American Family Mut. Ins. Co.*,

    189 F.Supp.3d 896 (D. Minn. 2016) ...................................................... 24, 36

*McMahan v. Toto*,

> 311 F.3d 1077 (11th Cir. 2002) ............................................................... 29, 30

*McPhillips v. Scottsdale Ins. Co.*,

> 2018 WL 3805865 (M.D. Fla. Aug. 10, 2018) ............................................. 45

*Metal Products Co., LLC v. Ohio Security Ins. Co.*,

> No. 21-11612, 2022 WL 104618 (11t Cir. Jan. 11, 2022) ........................... 49

*Milligan v. CCC Information Services, Inc.*,

> 920 F.3d 146 (2d Cir. 2019) ....................................................................... 20

*Nalcrest Foundation, Inc. v. Landmark American Ins. Co.*,

> 2018 WL 4293147 (M.D. Fla. July 27, 2018) ............................................. 46

*New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*,

> 156 So. 695 (Fla. 1934) .............................................................................. 49

*Nygaard v. Property Damage Appraisers, Inc.*,

> 779 Fed. App'x 474 (9th Cir. 2019) ........................................................... 20

*Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*,

> 443 P.3d 47 (Col. 2019) .............................................................................. 41

*Palmer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*,

> No. 13-80741, 2014 WL 12461372 (S.D. Fla. Nov. 7, 2014) ................... 8, 36

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*,

> 551 U.S. 701 (2007) .................................................................................... 28

*Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*,

    No. 10-23965, 2011 WL 13099891 (S.D. Fla. Sept. 11, 2011) ............. 24, 31

*Penn Central Corp. v. Consolidated Rail Corp.*,

    56 N.Y.2d 120 (N.Y. Ct. App. 1982) ............................................................11

*People's Trust Ins. Co. v. Fernandez*,

    317 So. 3d 207 (Fla. 3d DCA 2021)..............................................................23

*People's Trust Ins. Co. v. Nowroozpour*,

    277 So. 3d 135 (Fla. 4th DCA 2019)................................................. 13, 23, 27

*People's Trust Ins. Co. v. Slavin*,

    No. 4D21-3025, 2022 WL 1021043 (Fla. 4th DCA April 6, 2022)..............36

*People's Trust Ins. Co. v. Vidal*,

    305 So. 3d 710 (Fla. 3d DCA 2020)..............................................................23

*Pernas v. Scottsdale Ins. Co.*,

    No. 1:15-cv-21506, 2016 WL 471949 (S.D. Fla. Feb. 8, 2016) ...................36

Petrello v. White,

    533 F.3d 110 (2d Cir. 2008) ..........................................................................26

*Place at Naples III Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:21-cv-183, 2022 WL 714810 (M.D. Fla. Mar. 10, 2022) ........... 27, 37

*Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    2022 WL 1085541 (M.D. Fla. Jan. 26, 2022) .................................... 7, 26, 37

*Providence Washington Ins. Co. v. Gulinson*,

    215 P. 154 (Col. 1923)......................................................................41

*Puryear v. State*,

    810 So. 2d 901 (Fla. 2002) ...........................................................32

*Red Cross Line v. Atlantic Fruit Co.*,

    264 U.S. 109 (1924)..................................................................9, 31

*Residences at European Village Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    No. 3:19-cv-1490, 2020 WL 5948314 (M.D. Fla. July 17, 2020) ...............24

*Ridell v. Rochester German Ins. Co. of N.Y.*,

    89 A. 833 (R.I. 1914)....................................................................48

*Rodriguez v. Powell,*

    853 Fed.App'x 613 (11th Cir. 2021) ............................................20

*Rogers v. State Farm Fire & Cas. Co.*,

    984 So. 2d 382 (Ala. 2007)............................................................6

*Ruckdeschel v. People's Trust Ins. Co.*,

    327 So. 3d 311 (Fla. 4th DCA 2021)............................................23

*Saba v. Homeland Ins. Co. of America*, 159 Ohio St. 237, 248-249

(Ohio 1953) ......................................................................... 10, 31

*Safepoint Ins. Co. v. Hallet*,

    No. 5D20-206, 2021 WL 2599656 (Fla. 5th DCA, June 25, 2021)..............30

*SafePoint Ins. Co. v. Sousa*,

    275 So. 3d 684 (Fla. 3d DCA 2019)............................................................47

*Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.*,

    390 F.3d 684 (10th Cir. 2004) .......................................................................12

*Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    No. 20-CV-10063-JEM, 2020 WL 6875747 (S.D. Fla. Oct. 26, 2020)........24

*Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*,

    No. 05-14362-Civ, 2009 WL 790120 (S.D. Fla. Mar. 24, 2009).................30

*Sauer v. Xerox Corp.*,

    17 F.Supp.2d 193 (W.D. N.Y. 1988)............................................................25

*Smith v. Organization of Foster Families for Equality and Reform*,

    431 U.S. 816 (1977).......................................................................................40

*Sos v. State Farm Mutual Auto. Ins. Co.*,

    396 F.Supp.3d 1074 (M.D. Fla. 2019) .........................................................47

*St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*,

    No. 13-1977, 2013 WL 6190400 (D. Minn. 2016) ............................... 24, 37

*St. Paul Fire & Marine Ins. Co. v. Walsenburg land & Development Co.*,

    278 P. 602 (Col. 1929)..................................................................................41

*State Farm Fla. Ins. Co. v. Gonzalez*,

    76 So. 3d 34 (Fla. 3d DCA 2011).................................................................29

*Stillman v. Travelers Ins. Co.*,

    88 F.3d 911 (11th Cir. 1996) ........................................................................36

*Sun Ins. Office, Ltd. v. Clay*,

    133 So. 2d 735 (Fla. 1961) ..........................................................................32

*Supreme Fuels Trading FZE v. Sargeant*,

    689 F.3d 1244 (11th Cir. 2012) ....................................................................26

*Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*,

    981 F.Supp. 581 (N.D. Iowa 1997) ..............................................................42

*Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*,

    250 F. Supp. 2d 1357 (M.D. Fla. 2003) ........................................... 8, 28, 30

*Todd v. Hyzer*,

    18 So. 888 (Fla. 1944) ..................................................................................24

*Trinidad v. Fla. Peninsula Ins. Co.*,

    121 So. 3d 433 (Fla. 2013) ...........................................................................47

*Triton Renovation, Inc. v. Empire Indemnity Ins. Co.*,

    No. 2:20-cv-432-JLB-NPM, 2021 WL 2291363 (M.D. Fla. June 4,

    2021) .................................................................................................... 45, 46

*Tscheider v. Biddle*,

    24 F. Cas. 253 (E.D. Miss. 1877) ................................................................10

*Twelfth Ave. Investments, Inc. v. Smith*,

    979 So. 2d 1216 (Fla. 4th DCA 2008)............................................................23

United States v. Carrigan,

    804 F.2d 599 (10th Cir. 1986) ........................................................................42

*Vasquez v. Citizens Property Ins. Corp.,*

    304 So. 3d 1280 (Fla. 3d DCA 2020)............................................................47

*Villareal v. Owners Ins. Co.*,

    No. 16-cv-01862, 2016 WL 9735733 (D. Col. Dec. 1, 2016).......................42

*Vista Pointe Townhome Ass'n Inc. v. Auto-Owners Ins. Co.*,

    2018 WL 1773407 (D. Colo. April 13, 2018) ...................................... passim

*Vista View Apartments, Ltd. v. Chubb Custom Ins. Co.*,

    No. 08-22772, 2009 WL 10669062 (S.D. Fla. July 6, 2009).......................45

*Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*,

    906 N.W.2d 205 (Iowa Ct. App. July 19, 2017) .............................................6

*Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.,*

    No. 2:19-cv-81, 2019 WL 3852731 (M.D. Fla. Aug. 16, 2019).......... passim

*Westar Energy, Inc. v. Lake*,

    552 F.3d 1215 (10th Cir. 2009) ......................................................................25

*Western Surety Co. v. PASI of LA, Inc.*,

    334 F.Supp.3d 764 (M.D. La. Sept. 25, 2018) .........................................9, 25

*Wexler v. Chubb Nat'l Ins. Co.*,

    2022 WL 888944 (N.D. Ill. Mar. 25, 2022) ...................................................46

*Williams v. Citizen Prop. Ins. Co.*,

    285 So. 3d 334 (Fla. 4th DCA 2019)............................................................30

*Wingerter v. Chester Quarry Co.*,

    185 F.3d 657 (7th Cir. 1998) ........................................................................20

*Woodward v. Liberty Mut. Ins. Co.*,

    No. 3:09-cv-0228, 2010 WL 1186323 (N.D. Tex. Mar. 26, 2010)...............24

## Rules

Fed. R. Civ. P. 56 ..............................................................................................3

Fed. R. Civ. P. 56(a)........................................................................................38

Fed. R. Civ. P. 65 .................................................................................. passim

Fed. R. Civ. P. 72(b)(3)....................................................................................20

## Codes

28 U.S.C. §1292(a)(1).................................................................................1, 26

28 U.S.C. §636(b)(1)(B) ..................................................................................20

## Other Authorities

112 A.L.R. § 9 (1938) ......................................................................................11

15 Couch on Insurance §209:10 (2021)............................................................12

44 A.L.R.2d 850 §1 (1955) ..............................................................................10

5 POMEROY, EQUITY JURISPRUDENCE (4th ed. 1919)................................................31

Alfred Hayes, *Specific Performance of Contracts for Arbitration or*

 *Valuation*,

 1 CORNELL L. REV. 225, 225 (1916)............................................................11

Amy M. Coughenourd, *Appraisal and the Property Insurance Appraisal*

 *Clause—A Critical Analysis: Guidance and Recommendations for*

 *Arizona*, 41 ARIZ. ST. L.J. 403, 413 (2009)....................................................12

Amy O'Connor, *NAIC Data: Florida Property Lawsuits Total 76% of*

 *Insurer Litigation in U.S.*, INSURANCE JOURNAL (April 14, 2021).................5

Amy Schmitz, *Ending A Mud Bowl: Defining Arbitration's Finality Through*

 *Functional Analysis*, 37 GA. L. REV. 123, 169 (2002) ..................................25

Amy Schmitz, *Refreshing Contractual Analysis of ADR Agreements by*

 *Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT.

 L. REV. 1, 2, 4 n.22 (2004) ..................................................................... 34, 39

BAXTER DUNAWAY, 4 LAW OF DISTRESSED REAL ESTATE §44A:17 (2022

 update) .......................................................................................................5

Charles Edwards, *An Appraisal of the Appraisal Remedy in Property*

 *Insurance*, 136 THE NAT'L REV. (Vol. XII) (May, 11, 2022).........................5

David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 TLN. L. Rev. 495, 541 (1999) ....................................................................13

Ed Leefeldt, *Why Is Homeowners Insurance In Florida Such a Disaster?*, FORBES (Mar. 26, 2021)...................................................................5

Evan Stephenson & Kayla Scroggins-Uptigrove, *"Just Win, Baby": The Tenth Circuit Rejects the "Anything Goes" Tactics of the Hail-Litigation Gold Rush,* 96 DENVER L. REV. 267, 267, 276 (2019) ...................5

Gary Williams, *Winning the Property Insurance Appraisal*, 45-OCT JTLATRIAL 22, 26 (2009) .............................................................9

GREGORY DELL ET AL., FLORIDA INSURANCE LAW & PRACTICE §14:8 (2021-2022 ed.) ......................................................................8

Hayes, *Specific Performance of Contracts for Arbitration or Valuation* 1 CORN. L. QUART. 225 (1916).......................................................31

Jason Kirwan, *Appraising A Presumption: A Modern Look at the Doctrine of Specific Performance In Real Estate Contracts*, 47 WM. & MARY L. REV. 697, 701 (2005)...................................................................13

Johnny Parker, *Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*, 37 U. TOL. L. REV. 931, 931 (2006) ...........................5

JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 344-345,

    349 (3d ed., 2015).................................................................... passim

Law & Starinovich, *What Is It Worth? A Critical Analysis of Insurance*

    *Appraisal,*...............................................................................25

Mark Ticer, *A Primer on Appraisal in Texas: One of the Most Frequently*

    *Abused and Misused Provisions in an Insurance Policy*, 5 J. TEX. INS.

    L. 41, 42 (2004) ...............................................................5

MICHAEL BOYER & BARRY ZALMA, PROPERTY INVESTIGATION CHECKLISTS:

    UNCOVERING INSURANCE FRAUD §1:42 (13th ed., 2021 update)....................5

Richard Coulson, *Is Contractual Arbitration an Unconstitutional Waiver of*

    *the Right to Trial by Jury in Oklahoma?*, 16 OKLA. CITY U. L. REV. 1,

    11 (1991).........................................................................11

Samuel Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530,

    557 (2016).......................................................................34

*Specific Enforcement of Arbitration Contracts*, U. PENN. L. REV. 160, 161,

    176 (1934).......................................................................11

*Specific Performance of Contracts Containing A Provision to Arbitrate*, 31

    Y.L.J. 670, 670-671 (1922) .........................................................31

Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. PENN. L. R. 909, 920 (1987)..............................................................25

Timothy Gray et al., *Benefits, Pitfalls, and Trends in Property Appraisal*, 44-SPG BRIEF 20, 21 (2015).......................................................5, 6

Timothy P. Law & Jillian L. Starnovicha, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 CONN. INS. L.J. 291, 298 (2006-2007) ...........................................................................12

Wesley A. Sturges & William W. Sturges, *Appraisals of Loss and Damage Under Insurance Policies*, 13 U. MIAMI L. REV. 1, 2 (1958)........... 11, 34, 39

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The District Court has original jurisdiction under 28 U.S.C. §1332(a)(1) and this Court has appellate jurisdiction under §1292(a)(1). The order appealed constituted injunctive relief, since it compelled Empire's specific performance of the insurance policy's appraisal provision.

## STATEMENT OF THE ISSUES

All issues involve purely legal questions seeking this Court's first impression. Several have state and circuit-wide impact.

First, Empire appealed from an interlocutory order compelling appraisal under 28 U.S.C. §1292(a)(1). The specific performance of a contract is an interlocutory remedy contemplated by Section 1292(a)(1), if the order's *form* or *substance* comes within the scope of Fed. R. Civ. P. 65. Despite affording injunctive relief in compelling appraisal, the lower court refused to acknowledge doing as much. **Is the form or substance of the order injunctive and, thus, appealable under Section 1292(a)(1)?**[2]

Second, the district court improperly compelled appraisal outside the parameters of specific performance. Florida law regards compelling appraisal a substantive right to specific performance. Federal courts exercise equitable powers in affording such relief through Rule 65. Below, the court failed to do this, compelling appraisal as something *other than* specific performance instead, without the requisite pleading and proof. **May a federal district court compel an insurance appraisal outside its equity jurisdiction under Rule 65?**

Third, the district court incorrectly compelled appraisal without adjudicating Empire's alleged breach of the provision through summary judgment. Specific

---

[2] Empire rests on its jurisdictional brief in answering "yes" to this question.

1

performance of a contract is a remedy presupposing the existence and adjudication of a breach. Here, the lower court refused to require a summary judgment. **May a federal district court compel appraisal without adjudicating the breach of the provision through summary judgment?**

Fourth, the district court wrongly refused to consider providing any minimal guidelines for appraisal. Judicial enforcement of Empire's contractual obligation amounts to injunctive remedy. Specific performance requires tailoring under Rule 65 and the lower court's inherent powers. Moreover, all judicial action must safeguard minimal due process for the parties. Here, the lower court refused to consider any instructions or minimal guidelines for appraisal, disclaiming any power to prescribe them. **May the lower court tailor the remedy of compelling appraisal by prescribing reasonable guidelines?**

# STATEMENT OF THE CASE

## I.    Introduction

Judicial enforcement of insurance appraisals is broken. Federal procedure granting such relief has grown arbitrary and uncertain. It should be neither. Despite raising new questions of procedure, including how a federal court may properly compel appraisal, this case does not demand novel solutions. This Court is aided by long-standing common law and federal equitable principles. In and out of Florida, compelling appraisal constitutes the injunctive remedy of specific performance, absent a contrary statute. Logically, Federal Rules of Civil Procedure 56 and 65 should govern access to such relief. These rules safeguard due process in granting pleaded remedies before trial and compelling parties to act in aid of such relief. Yet, these rules are routinely side-stepped in compelling appraisal in this circuit.

Instead, district courts increasingly mirror a worrisome practice spreading among Florida courts. Rather than compel appraisal upon a showing of entitlement to specific performance, courts do so upon mere motion, without injunctive relief needing to be pleaded or proven. Adding to the uncertainty, district courts even allow these motions despite the moving party having initially pled—or attempted to plead—entitlement to specific performance. The result is a novel and unprincipled procedure. Essentially, the practice affords the benefits of Rules 56 and 65 without imposing on movants any of the attending burdens.

Against this backdrop, Empire was compelled to appraise below. It appeals from this unprecedented procedural shortcut to regain the long-standing guarantees of federal law and equity.

## II.    Historical and Legal Background

### A.    Growth of Procedural Disarray in Compelling Appraisal

Appraisal is routinely sought in cases like this one, with condominium associations claiming millions of dollars in benefits allegedly owed. Despite the high stakes involved, federal courts are inconsistent in how they compel appraisal. The current procedural disarray in compelling appraisal explains why the court below resorted to a novel procedure, how the latter contrasts with historical practice, and what the stakes of this appeal are for Empire and similarly situated parties.

Previously rare and cost-effective, appraisals are now the expensive "new normal" in property insurance claims due to climbing litigation. *See* Johnny Parker, *Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*, 37 U.

TOL. L. REV. 931, 931 (2006).[3] The "gold rush"[4] to sue for appraisal raises concerns about exaggerated or fraudulent repair and replacement estimates. *See* MICHAEL BOYER & BARRY ZALMA, PROPERTY INVESTIGATION CHECKLISTS: UNCOVERING INSURANCE FRAUD §1:42 (13th ed., 2021 update).[5] Florida, of course, is ground zero for such litigation.[6]

---

[3] *See also* JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 5, 60 (3d ed., 2015) (noting increased litigation and expense); Timothy Gray, Brian Odom, & Shannon O'Malley, *Benefits, Pitfalls, and Trends in Property Insurance Appraisal*, 44-SPG BRIEF 20, 22 (2015) (intended as cost-effective); Mark Ticer, *A Primer on Appraisal in Texas: One of the Most Frequently Abused and Misused Provisions in an Insurance Policy*, 5 J. TEX. INS. L. 41, 42 (2004) (historically intended to benefit insurer).

[4] *Cf.* Evan Stephenson & Kayla Scroggins-Uptigrove, *"Just Win, Baby": The Tenth Circuit Rejects the "Anything Goes" Tactics of the Hail-Litigation Gold Rush,* 96 DENVER L. REV. 267, 267, 276 (2019) (describing increase in federal storm litigation as "gold rush," defined as "when the law substantially creates or expands opportunities to make money by filing civil lawsuits, and plaintiffs' lawyers respond . . . by filing many new lawsuits that previously would not have been brought").

[5] *Cf. also* BAXTER DUNAWAY, 4 LAW OF DISTRESSED REAL ESTATE §44A:17 (2022 update) (55% of real estate appraisers reported being pressured to inflate value). One wonders what that figure is among insurance appraisers, "not governed by any industry standards." Charles Edwards, *An Appraisal of the Appraisal Remedy in Property Insurance*, 136 THE NAT'L REV. (Vol. XII) (May, 11, 2022).

[6] Florida homeowner insurance litigation represented 76.4% of such litigation nationwide in 2019. Amy O'Connor, *NAIC Data: Florida Property Lawsuits Total 76% of Insurer Litigation in U.S.*, INSURANCE JOURNAL (April 14, 2021). This has turned Florida into "a legal sinkhole," "threatening to swamp [insurers] even during years when there are no storms," impacting both industry profits and homeowner premiums. Ed Leefeldt, *Why Is Homeowners Insurance In Florida Such a Disaster?*, FORBES (Mar. 26, 2021) ("Florida insurers saw a profit of almost $800 million in 2014 dwindle to a net loss of $340 million in 2019[.]"

The Florida Supreme Court's decision in *Johnson* likely played a role in the proliferation of appraisals and related litigation. *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002). Deviating from history,[7] *Johnson* allowed appraisers to decide damage causation, a coverage issue normally reserved for courts. Perhaps the Court did not understand it at the time, but allowing appraisers to determine causation is a practice that raises due process concerns. *See, e.g., Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 906 N.W.2d 205, 205 (Iowa Ct. App. July 19, 2017) (McDonald, J., dissenting). *Johnson* also exponentially raised the stakes, giving appraisers the ability to directly or indirectly decide coverage issues in multi-million dollar cases.

A subsequent Florida Supreme Court case further compounded the stakes in appraisal. While *Johnson* expanded the authority of appraisers, the Florida Supreme Court then reduced their accountability and procedural safeguards in 2002, when it held that the Arbitration Code was inapplicable to appraisals. *Allstate Insurance Company v. Suarez*, 833 So. 2d 762 (Fla. 2002). With the onslaught of the 2005 and

---

[7] *Cf.* Timothy Gray et al., *Benefits, Pitfalls, and Trends in Property Appraisal*, 44-SPG Brief 20, 21 (2015) (historically, appraisals only invoked if agreement existed on existence and scope of damage). Alabama, part of this circuit, continues to adhere to the majoritarian interpretation of appraisal as excluding causation determinations, openly rejecting *Johnson*. *See Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007).

2006 hurricane seasons, Florida experienced a "significant rise" in appraisal demands ever since.[8]

As a result of *Johnson* and *Suarez*, the perception is that not only could appraisers settle the scope, cause, and value of a multi-million dollar loss, but they could also do it *however* they wish. Any claim may become a multi-million dollar one. Unsurprisingly, disputes often arise involving the procedural and substantive contours of appraisal to correct that perception.

Yet, Federal courts have grown procedurally unpredictable in compelling appraisal. Some require that appraisal be pleaded or proven as specific performance. *See, e.g., Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23728-CIV, 2013 WL 2646828, at *3 (S.D. Fla. June 12, 2013). Others do not, denying that compelling appraisal is "remedial" at all. *See, e.g., Marbella at Spanish Wells 1 Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-641, 2022 WL 1302328, at *1 (M.D. Fla. May 2, 2022). Others leave procedural burdens to the moving party's choice. *See, e.g., Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-178, 2022 WL 1085541, at *6 (M.D. Fla. Jan. 26, 2022).

Similarly, some courts construe motions to compel appraisal as essentially seeking summary judgment. *See, e.g., Palmer v. Fidelity Nat'l Prop. & Cas. Ins.*

---

[8] Thomas Kos, *The Appraisal Process*, PROPERTY CASUALTY 360 (Nov. 2, 2007).

*Co.,* No. 13-80741, 2014 WL 12461372, at *5 (S.D. Fla. Nov. 7, 2014). Others disagree. *See, e.g., Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.,* No. 2:19-cv-81, 2019 WL 3852731, at *2 (M.D. Fla. Aug. 16, 2019). Even the same judge will occasionally equivocate. *Compare Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-00136, 2020 WL 5973177, at *4 (M.D. Fla. Sept. 2, 2020) (deeming "motion to compel appraisal . . . presently equivalent to a summary judgment motion"), *with Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136, 2021 WL 2003007, at *1 (M.D. Fla. May 19, 2021) (deeming motion for summary judgment "not the proper vehicle to address appraisal").

Relatedly, inconsistency also abounds in enforcing ensuing awards. Some courts properly allow insurers to contest elements of coverage post-appraisal. Others do not. A minority in this circuit continues to advocate the analogy of appraisals to arbitration, "confirming" awards the same way. On this, "the federal courts . . . have [also] muddied the waters." GREGORY DELL ET AL., FLORIDA INSURANCE LAW & PRACTICE §14:8 (2021-2022 ed.).[9]

---

[9] *Compare, e.g., Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357 (M.D. Fla. 2003) (disallowing insurer from contesting elements of coverage post-appraisal), *with Liberty American Ins. Co. v. Kennedy*, 890 So. 2d 539, 541 (Fla. 2d DCA 2005) (disapproving of *Three Palms Pointe* and allowing challenge of coverage elements post-appraisal), *and Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, No. 07-20897-Civ-Ungaro, 2008 WL 11407210, at *1 n.1 (S.D. Fla. Apr. 21, 2008) (following *Kennedy*).

Since *Suarez*, a novel practice has emerged whereby federal courts increasingly compel appraisal upon mere motion, a shadow of the process traditionally required for specific performance. And absent from federal "equity jurisdiction," embodied by Rule 65. *See Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991).[10] The court below relied on this novel practice in refusing to require a specific performance showing.

## B.    The Novel Process Defies Historical Practice

There is nothing normal to this "new normal" of compelling appraisal upon mere motions and argument of counsel. Although appraisal "has been a part of property insurance for at least 200 years," Gary Williams, *Winning the Property Insurance Appraisal*, 45-OCT JTLATRIAL 22, 26 (2009), this other novel practice enforcing it is recent everywhere.

Historically, courts rarely compelled appraisal. In theory, they could through specific performance. *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 120-121 (1924). In practice, they did not. "[S]pecific performance [wa]s a departure from common law." *Hepburn et al. v. Auld. et al*., 5 Cranch 262, 279 (1809). And breach of contract damages were available: a trial in lieu of appraisal could determine the

---

[10] *Cf. also Western Surety Co. v. PASI of LA, Inc.*, 334 F.Supp.3d 764, 799 (M.D. La. Sept. 25, 2018) ("[T]he Court cannot enforce state law allowing specific performance absent proof of . . . Rule 65's requirements.").

amount of loss. *See* 44 A.L.R.2d 850 §1 (1955) (insurer's failure to appraise "abrogate[d] the appraisal clause," freeing insured to "institute an action for damages for the breach").[11] So too in Florida. *Cf. Hanover Fire Ins. Co. v. Lewis*, 10 So. 297, 302 (Fla. 1891) (relying on *Gauche v. London & L. Ins. Co.*, 10 F. 347, 356 (E.D. La. 1881) (explaining that "'[i]f two persons, whether in the same or in a different deed from that which creates the liability, agree to refer the matter upon which the liability arises to arbitration, *that agreement does not take away the right of action*.'") (emphasis added)). Although some courts barred suit unless appraisal took place,[12] consequential damages were available for wrongful refusal. *See Biddle*, 24 F. Cas. at 256.[13]

Despite the "dearth of direct authority" on some aspects, 44 A.L.R.2d 850 §1 (1955), enough exists: appraisal was either not specifically performable at all, or was in theory but not in practice, due to available breach of contract damages. *See* Alfred

---

[11] *See also Cedant Corp. v. Forbes*, 70 F.Supp.2d 339, 343 (S.D.N.Y. 1999); *Saba v. Homeland Ins. Co. of America*, 159 Ohio St. 237, 248-249 (Ohio 1953) (Hart, J., dissenting) (explaining common law refusal); *Tscheider v. Biddle*, 24 F. Cas. 253, 255 (E.D. Miss. 1877) (noting availability of damages).

[12] *Holmes v. Richet*, 56 Cal. 307, 313, 315 (Cal. 1880) (acknowledging failure of policy to make it a condition precedent, but still deeming appraisal as such).

[13] *Biddle*, 24 F. Cas. at 256. *Cf. also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6-7 (acknowledging insured's "'chicken-and-egg' dilemma" but noting adequate remedy in insured's bad faith claim).

Hayes, *Specific Performance of Contracts for Arbitration or Valuation*, 1 CORNELL L. REV. 225, 225 (1916) ("doctrine that equity will not specifically enforce contracts for . . . valuation" "almost uniformly adhered to").[14]

Today, most jurisdictions continue to enforce appraisal through specific performance. JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 344-345, 349 (3d ed., 2015). However, some did not allow such specific performance absent an enabling statute. *See Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*, 1 N.Y.2d 534, 538 (N.Y. 1956).[15] The proliferation of arbitration statutes caused

---

[14] *See also* Sidney Simpson, *Specific Enforcement of Arbitration Contracts*, U. PENN. L. REV. 160, 161, 176 (1934) (noting refusal to enforce even "in spite of the manifest inadequacy of the legal remedy," and explaining any change must be legislated); Wesley A. Sturges & William W. Sturges, *Appraisals of Loss and Damage Under Insurance Policies*, 13 U. MIAMI L. REV. 1, 2 (1958) (appraisal "enforcement" "at common law" "suggests, of course, specific performance of the provision" through suit "to obtain a[n] . . . injunctional order that the non-complying party proceed with appraisal," to force the appointment of appraisers or umpires, or for damages).

[15] *See also Penn Central Corp. v. Consolidated Rail Corp.*, 56 N.Y.2d 120, 129 (N.Y. Ct. App. 1982) (deeming specific performance of appraisal "a remedy not available at common law"). *Happy Hank's* view of the common law of appraisal was first contradicted by *Saba*, 159 Ohio St. at 237. The dispute was whether specific performance was available—if rarely merited—or not at all. Even critics of *Happy Hank* admit that *Saba's* approach was "new . . . within traditional equity jurisprudence." *See* Sturges, *supra* at 9, 13. *See also* 112 A.L.R. 9 (1938) (noting case law disproving Sturges' claims of "insufficient authority" on issue); Richard Coulson, *Is Contractual Arbitration an Unconstitutional Waiver of the Right to Trial by Jury in Oklahoma?*, 16 OKLA. CITY U. L. REV. 1, 11 (1991) (labeling "common law of arbitration" "monolithic").

11

further confusion in jurisdictions where they do not expressly include appraisals.[16] And yet, "[t]he distinction . . . can have ramifications on the authority of the court." 15 COUCH ON INSURANCE §209:10 (2021 update).[17]

Despite the "numerous courts around the country . . . tak[ing] guidance from cases and statutes relating to arbitration, insurance appraisal is actually distinct." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 21. Most states recognize this. *Id.* at 22-24. The analogy has yielded "serious consequences" nationwide. *Id.* at 37.

So too in this circuit. Pre-*Suarez* cases applying the Arbitration Code to appraisals caused "confus[ion] . . . with somewhat unpredictable consequences." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 23. The analogy is motivated by policy considerations. *Id.* at 39. Against *Suarez*, courts in this circuit continue to compel appraisal by relying on pre-*Suarez* cases. Even when Florida

---

[16] *See* Amy M. Coughenourd, *Appraisal and the Property Insurance Appraisal Clause—A Critical Analysis: Guidance and Recommendations for Arizona*, 41 ARIZ. ST. L.J. 403, 413 (2009). Nor do appraisals come within the Federal Arbitration Act. *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,* 390 F.3d 684 (10th Cir. 2004); *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684 (6th Cir. 2012).

[17] Timothy P. Law & Jillian L. Starnovicha, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 CONN. INS. L.J. 291, 298 (2006-2007) (issue "impact[s] the applicability of state and federal laws, as well as the procedural protections afforded").

courts increasingly warn that, in the appraisal context, "the analogy [to the Code] [i]s misplaced." *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712.

The novel practice compelling appraisal has become noticed. *People's Trust Ins. Co. v. Nowroozpour*, 277 So. 3d 135, 136 (Fla. 4th DCA 2019) (deeming, in *dicta*, mere motion to compel appraisal as "traditional" as pleading and proving specific performance). But there is nothing "traditional" about it, especially in federal court. *See Mapleton Processing, Inc. v. Society Ins. Co.*, No. C12-4083-LTS, 2013 WL 3467190, at *24 (N.D. Iowa July 10, 2013) (disavowing such power).[18]

The practice highlights why "[f]ew premises are recited so . . . reflexively, as 'specific performance is an extraordinary remedy.'" David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 TLN. L. Rev. 495, 541 (1999). Historically, those seeking specific performance of non-land contracts "face[d] an uphill battle in American courts . . . [given] the presumption in favor of money damages[.]" Jason Kirwan, *Appraising A Presumption: A Modern Look at the Doctrine of Specific Performance In Real Estate Contracts*, 47 Wm. & Mary L. Rev. 697, 701 (2005). Today, it looks more like a race down-hill. At least in the insurance context.

---

[18] *See also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (same); *Battles, Inc. v. Nationwide General Ins. Co.*, No. 3:19-cv-13-DML-DCP, 2020 WL 6365513, at *4-*5 (E.D. Tenn. March 10, 2020) (same).

## III.    Factual and Procedural Background[19]

### A.    The Property and the Policy

This case involves a Hurricane Irma claim that Empire investigated and paid in the amount it believed owed. Creekside, a residential complex spanning twenty seven buildings, stands on Florida's southwestern shore in Bonita Springs [R. 398, 534]. Each building is separately insured under a policy, number ECL9490456-03 (the "Policy") ($21,866,347 total value) [R. 418]. And each is subject to a 3% deductible (totaling about $655,990.41). *Id.*

The Policy pays Replacement Cost coverage benefits by default when repairs are completed, but allows Creekside to present, instead, a separate ACV claim without having to perform repairs:

> **3. Replacement Cost**
>
> **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.
>
> [. . .]
>
> **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

---

[19] All references to the Record on Appeal—the Appendix to Empire's merits brief to be filed shortly—are as follows: "R. at _," or "R. at _ (¶_)."

[R. 648]. The Policy also contains an appraisal provision [R. 650]:

**Mediation Or Appraisal**

If we and you:

[. . .]

**B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### B. Empire Investigates and Adjusts the Claim

Creekside first notified Empire of storm damage to its property as a result of Hurricane Irma in April of 2018, eight months after the loss [R. 682]. Empire investigated. It inspected the property the following month [R. 569 (¶11)]. Two months later, Creekside hired George Keys, its public adjuster [R. 684]. Empire found covered damage to some buildings, estimated at $2,665,730.25 in replacement costs [R. 569 (¶11), 685]. Empire then paid $1.3 million in September of 2018 in undisputed actual cash value ("ACV") [R. 683].

Through its public adjuster, Creekside first provided Empire with a sworn proof of loss ("POL") fourteen months after the loss, in December of 2018 [R. 684],

15

for an unprecedented $13,163,979.48 in "estimated" Replacement Cost Value
("RCV") benefits to replace all roofs, windows, and doors [R. 687]:

| VALUE | THE ACTUAL CASH VALUE of damaged said property at the time of loss was | $ N/A |
| LOSS | THE WHOLE LOSS AND DAMAGE was.........estimated....................... | $ 13,163,979.48 |
| DEDUCTIBLE | THE APPLICABLE DEDUCTIBLE is ................................................. | $ 651,226.02 |
| AMT. CLAIMED | AMOUNT CLAIMED under the above numbered policy is ...estimated ............ | $ 12,512,753.46 |

A month later, Creekside signed yet another POL, this time adding depreciation and
quantifying ACV at a net $12,641,294.69 [R. 690]:

| 6. | The full cost of repair or replacement is ……………………….….…….$ | 13,205,220.94 |
| 7. | Applicable depreciation or betterment is ……………………………….$ | 563,926.25 |
| 8. | Actual cash value loss (Line 6 minus Line 7) ……………………………$ | 12,641,294.69 |
| 9. | Less deductibles and /or participation by the insured  ……………………$ | 651,226.02 |
| 10. | The Amount Claimed under the above numbered policy is ……………..……$ | 12,553,994.92 (RCV) |

In the interim, Keys conditionally demanded appraisal, if Empire disagreed with  his
estimate of the loss [R. 691].

Empire was forced to investigate further. It requested surveys [R. 683] and
made an additional payment of $163,993.16 in August of 2019 [R. 683]. The
following month, it requested additional documents and took the examination under
oath of one of Creekside's board members [R. 683]. In October of 2020, Empire
conducted the examination of another board member [R. 683].

Emails between Creekside's board members dated a mere day after Keys first
submitted the $13 million POL in 2018, show that Creekside and its agents
disbelieved the amount [R. 696]:

16

> Here is a number that will jolt you, the Amount of the total claim for roofs ( which we have already received)   and glass is $13,163,979.48.  That $13 **million!**
> We do not have any idea how much the payment will be ( probably not near $13mm) or when we will be told.  What we do know is we will need everyone involved to make the difficult decisions as we move forward.

The amount was described as "incomprehensible" [R. 546]:

> What will our out of pocket be? The $13 million is incomprehensible and I would like Bill to give us his take on what we should do.
> If the replacement of glass results in a large debt for residents, I think we need some lengthy discussions before any decisions are made about our suggestions to the residents.....which we can't do without more information.
> Wow.....and yikes,

Despite later allegations that the reaction had been in jest [R. 696], additional emails revealed that those same board members questioned components of the public adjuster's estimate. For example, Creekside's property manager explained to Keys that all buildings had been last painted for $168,770.00, whereas the new estimate priced the same job at over $650,000.00 [R. 697]. Even Keys' estimator acknowledged that his estimates were "never" the actual costs insureds ended up paying [R. 698]. He could not explain why he increased costs and pricing. *Id.* Creekside was discouraged from seeking actual bids for its claim. *Id.*

### C.    Creekside Sues Empire

Creekside sued Empire after Empire's second payment, in February of 2020. It filed a "petition" to compel appraisal [R. 24, 27].

Empire moved to dismiss for failure to state a cause of action [R. 378]. The lower court agreed [R. 394]. Creekside filed amended complaints, seeking

declaratory judgment compelling appraisal and breach of contract damages [R. 299-300 (¶¶ 11, 15-18 (praying for "order to comply with . . . appraisal")), 402-404 (¶¶ 29(g)-(i) (seeking order compelling appraisal), 33 (praying for any "relief that this Court deems . . . appropriate" to redress Empire's alleged breach of the appraisal provision)].

Empire unsuccessfully moved to dismiss a second time [R. 484, 559]. It answered in August of 2020, relevantly alleging that: (1) not all damage claimed was covered [R. 569 (¶7)]; (2) appraisals demand had been unripe and improper, and sought appraisal of un-appraisable amounts absent complete repairs [R. 569-71 (¶¶13-15)]; (3) Empire could not owe RCV or Ordinance or Law ("O&L") benefits absent completed repairs or incurred expenses [R. 573-74]; and (4) Creekside had unclean hands through its agents' gross exaggeration of the claim [R. 576].

Creekside moved to compel appraisal [R. 522]. Empire opposed it [R. 533]. The court agreed with Empire, requiring Creekside to renew its motion in accordance with the prior order dismissing the complaint [R. 584]. The court had found that Creekside's "motion to compel appraisal . . . [wa]s presently equivalent to a summary judgment motion" [R. 567]. So, Creekside renewed its motion as one for summary judgment [R. 586]. Empire opposed it [R. 694]. *Sua sponte*, the court reconsidered its earlier order, now concluding that Creekside's pending motion for

18

summary judgment was "not the proper vehicle," denying it as moot, and requiring refiling [R. 2203].

Creekside readopted its first motion to compel appraisal [R. 2204]. Empire opposed, primarily arguing that: (1) compelling appraisal constituted injunctive, specific performance relief requiring pleading and proof [R. 2220]; (2) that such relief required summary judgment [R. 2227]; (3) that Creekside's appointment of Keys as appraiser violated the Policy [R. 2229]; and (4) that certain instructions or guidelines were required for appraisal, including the itemization of the award and minimal due process guarantees [R. 2232]. The Honorable Magistrate Judge agreed with Empire that Keys could not serve as appraiser [R. 2271], but disagreed on all issues, recommending appraisal [R. 2274].

Empire objected to the Magistrate's report on all major arguments [R. 2277]. After substantial briefing [R. 2300, 2313] the Honorable District Court Judge adopted the report and overruled the objections [R. 2322]. Empire appealed [R. 2332]. Since then, and upon additional briefing [R. 2368, 2385, 2398, 2408], the lower court granted Empire's motion to stay the case pending appeal [R. 2419].

### STATEMENT OF THE STANDARD AND SCOPE OF REVIEW

This Court reviews *de novo* all legal conclusions in the orders[20] compelling appraisal. *See Jacobs v. Nationwide Mut. Fire Ins. Co.*, 236 F.3d 1282, 1285 (11th Cir. 2001). Other circuits agree. *See Fireman's Fund Ins. Co. v. Steele Street Limited II*, No. 19-1096, 2022 WL 39392, at *5 (10th Cir. Jan. 5, 2022) (reviewing interlocutory order compelling appraisal *de novo*); *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1335 (7th Cir. 1983) (reviewing propriety of interlocutory appraisal order as legal ruling, not discretionary one). *Cf. also Milligan v. CCC Information Services, Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) (reviewing *de novo*); *Nygaard v. Property Damage Appraisers, Inc.*, 779 Fed. App'x 474, 475 (9th Cir. 2019) (same).

Additionally, *de novo* review of all components of the orders is appropriate because Empire sufficiently objected to the Honorable Magistrate's report below as one made under 28 U.S.C. 636(b)(1)(B) (requiring district court to review *de novo* all portions) and Fed. R. Civ. P. 72(b)(3) (same). *Cf. J.P.F.D. Investment Corporation v. United Specialty Ins. Co.*, 769 Fed. App'x 698, 703 (11th Cir. 2019) (noting that Fed. R. Civ. P. 72(b) applied to preserve *de novo* review district court's order on appraisal objections); *Rodriguez v. Powell,* 853 Fed.App'x 613, 618 (11th Cir. 2021) (magistrate rulings on dispositive matters subject to objections reviewable

---

[20] Both rulings—the magistrate and the district court judge's—are before this Court. *See, e.g., Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 661 (7th Cir. 1998).

*de novo*); *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. App'x 744, 748 (5th Cir. 2009) (same).

## SUMMARY OF THE ARGUMENT

**First, a federal court should not compel appraisal absent a sufficient showing of specific performance.** Florida law deems compelling appraisal specific performance relief. Federal courts may only exercise equitable powers (embodied by Rule 65) in affording it. Here, the lower court incorrectly stated that it could compel appraisal as something *other than* specific performance, without pleading or proof requirements anchored in federal procedure.

**Second, a federal court should not compel appraisal without adjudicating the breach of the provision through summary judgment.** The specific performance of a contract is a remedy that presupposes sufficient pleading and breach of the provision. Courts may neither grant insufficiently pled relief nor grant it without adjudicating a breach. Here, the lower court did both.

**Lastly, a federal court may prescribe reasonable guidelines for appraisal in tailoring that remedy.** Specific performance constitutes relief that requires discretion and tailoring under Rule 65. A court may also resort to its inherent powers in imparting reasonable instructions to safeguard the efficiency of appraisal process and the parties' due process. Here, however, the court disavowed having power to even consider such guidelines.

**ARGUMENT**

## I. Compelling Appraisal without a Showing of Specific Performance under Rule 65 was Procedurally Improper

Creekside should have sufficiently alleged and proven entitlement to specific performance under Rule 65. It did not. Instead, the court erroneously concluded that Creekside's "motion to compel appraisal" was "an appropriate vehicle" [R. 2326], upholding the Magistrate's conclusion that Creekside "is not required to plead and prove . . . specific performance" [R. 2262]. All despite the "persuasive value" of Empire's authorities [R. 2262].

First, the "right to compel appraisal" is enforceable through "a claim for specific performance of policy obligations" in Florida. *Nowroozpour*, 277 So. 3d at 136. *See also People's Tr. Ins. Co. v. Vidal*, 305 So. 3d 710, 715 (Fla. 3d DCA 2020) (same).[21] Compelling appraisal constitutes a remedy that must be pleaded or waived. *See People's Trust Ins. Co. v. Fernandez*, 317 So. 3d 207, 211 (Fla. 3d DCA 2021) (referring to appraisal as "remedy . . . [that] upholds the terms of the policy"); *Vidal*, 305 So. 3d at 715 (insurer sufficiently invoked appraisal in counterclaims).[22]

---

[21] *Cf. also Twelfth Ave. Investments, Inc. v. Smith*, 979 So. 2d 1216, 1220 (Fla. 4th DCA 2008) (appraisement of value in real estate purchase option constituted specific performance).

[22] *Cf. Ruckdeschel v. People's Trust Ins. Co.*, 327 So. 3d 311, 314 (Fla. 4th DCA 2021) (reversing grant of motion to compel repairs where insurer never pleaded in answer or counterclaim a request of specific performance of repair option); *Todd v.*

This Court has noted as much. *See, e.g., Anoushfar v. Lexington Ins. Co.*, No. 21-11244, 2021 WL 4848073. at *7  (11th Cir. Oct. 18, 2021) (insured "s[ought] specific performance in the form of an order compelling . . . appraisal"). District courts in this circuit agree. *See Biscayne Cove Condo. Ass'n, Inc.*, 2013 WL 2646828, at *3.[23]

Other federal courts concur. *See Vista Pointe Townhome Ass'n Inc. v. Auto-Owners Ins. Co.*, No. 16-cv-0973, 2018 WL 1773407, at *6 (D. Colo. April 13, 2018) (request to compel appraisal essentially one for specific performance).[24] Even

---

*Hyzer*, 18 So. 888, 890 (Fla. 1944) ("[S]pecific performance is not a matter of right, but . . . determined from all the facts and circumstances.").

[23] *See also Residences at European Village Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 3:19-cv-1490, 2020 WL 5948314, at *4 (M.D. Fla. July 17, 2020) (same); *Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, No. 10-23965, 2011 WL 13099891, at *3 (S.D. Fla. Sept. 11, 2011) (same); *Creekside Crossing Condo. Ass'n, Inc. v. Empire Indent. Ins. Co.*, No. 2:20-cv-136, 2020 WL 1904011, at *1 (M.D. Fla. Apr. 17, 2020) (same).; *La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F.Supp.2d 1332, 1334 (S.D. Fla. 2010) (denying appraisal for failure to plead and prove specific performance); *Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 20-CV-10063-JEM, 2020 WL 6875747, at *2 (S.D. Fla. Oct. 26, 2020) (dismissing count seeking specific performance of appraisal where coverage denied).

[24] *See also McCoy v. American Family Mut. Ins. Co.*, 189 F.Supp.3d 896, 900 (D. Minn. 2016) (motion to compel appraisal seeks specific performance despite parties' failure to characterize it as such); *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-cv-0228, 2010 WL 1186323, at *3 (N.D. Tex. Mar. 26, 2010) (motion to compel appraisal enforces appraisal clause through specific performance); *St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*, No. 13-1977, 2013 WL 6190400, at *3 (D. Minn. 2016) (motion to compel appraisal essentially a motion seeking specific performance order); *Sauer v. Xerox Corp.*, 17 F.Supp.2d 193, 201 (W.D.

scholarship so believes. *See* 16 COUCH ON INSURANCE § 232:170 (3d ed., 2021) ("A policy's requirement for an appraisal of a loss may be specifically enforced.").[25]

Second, a federal court's equity jurisdiction to grant specific performance, embodied by Rule 65, requires a showing of injunctive relief. *Compare Ferrero*, 923 F.2d at 1448 (federal "equity jurisdiction" incorporated by Rule 65), *with Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1223, 1225 (10th Cir. 2009) ("Specific performance is an equitable remedy, and an interim grant of specific relief is a preliminary injunction.").[26]

---

N.Y. 1988) (describing judicial enforcement of appraisals as common law power to "order specific performance of an appraisal"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (denying appraisal because insured failed to plead and make a showing for specific performance or injunction); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (same).

[25] *See also* Sturges, *supra* at 2 (explaining that "enforcement" of appraisal agreements "suggests, of course, specific performance of the provision" through suit for "injunctional order that the non-complying party proceed with appraisal," forcing appointment of appraisers, or for damages); Hayes, *supra* at 225; Simpson, *supra* at 160-161; Amy Schmitz, *Ending A Mud Bowl: Defining Arbitration's Finality Through Functional Analysis*, 37 GA. L. REV. 123, 169 (2002) ("Under contract law, courts may enforce valid appraisal agreements and determinations by ordering damages, specific performance, or other contract remedies."); Law & Starinovich, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, *supra* at 315-16 (compelling appraisal involves preliminary injunction).

[26] *See also* Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. PENN. L. R. 909, 920 (1987) (specific performance incorporated by Rule 65); *PASI of LA, Inc.*, 334 F.Supp.3d at 799 ("[T]he Court cannot enforce state law allowing specific performance absent proof of . . . Rule 65's requirements.").

25

This is supported by the fact that, for purposes of Section 1292(a)(1), courts look to whether the specific performance order "is injunctive in character" under Rule 65. *See Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012) (Pryor, C.J., concurring) (quoting *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008)). Thus, two other circuits deem orders compelling appraisal injunctive. *See Steele Street Limited II*, 2022 WL 39392, at *5 (holding order "requir[ing] . . . adher[ance] to the Policy's Appraisal Provision . . . substantively an injunctive order"); *Hayes*, 722 F.2d at 1335 (same). But the lower court refused to hold Creekside to the strictures of injunctive relief.

Third, the reasons proffered by the district court for its refusal are neither correct nor persuasive. It concluded that Creekside did not need to plead or prove specific performance because "parties can seek appraisal through breach of contract and declaratory judgment actions" [R. 2326 (citing *Positano Place at Naples II Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.,* No. 2L21-cv-181, 2021 WL 1610092, at *1 (M.D. Fla. Apr. 26, 2021))]. But the conclusion does not follow. *Positano* relied on *Castillo* and *Creekside* for that general premise. *See Positano*, 2021 WL 1610092, at *1 (citing *Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468, 2021 WL 4438370 (M.D. Fla. Sept. 28, 2021), and *Creekside Crossing Condo. Ass'n, Inc.*, 2020 WL 5973177).

Yet, *Creekside* does not provide a rationale or rely on precedent. *Cf. Calzadilla*, 2019 WL 22455518, at *4 (court action taken "without analysis" "is not persuasive").[27] And *Castillo* incorrectly disagreed that compelling appraisal constituted injunctive relief. 2021 WL 4438370, at *1-*2. Neither case involved a motion to compel appraisal or the identical arguments made in this case. *Positano* even ruled that the insured *did* sufficiently allege specific performance to compel appraisal. 2021 WL 1610092, at *2. Despite acknowledging that specific performance is a separately pleaded remedy traveling under breach of contract or declaratory judgment, the court inferred from this that a party may *choose* to seek appraisal through *either* specific performance *or* a mere motion. *Id at *1*. The inference is unfounded.

The lower court's conclusion that a party can choose between two ways to compel appraisal may ultimately derive from *Nowroozpour*, cited by *Positano*. 2021 WL 1610092, at *1. There, the panel noted, in *dicta*, that "it may [still] be more traditional" for a party to merely "move to compel an appraisal to seek enforcement of the policy provisions." *Nowroozpour*, 277 So. 3d at 136. This was not its holding.

---

[27] *See also Battles, Inc.*, 2020 WL 6365513, at *5 (denying appraisal while sitting in diversity jurisdiction and explaining that, although "Plaintiff cites several cases, arguing that motions to compel the appraisal process are regularly considered by courts . . . [t]hese cases, however, do not discuss the proper procedure to bring such motions"); *Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (similarly denying motion).

*Cf. Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 737 (2007) (courts "not bound to follow . . . dicta in a prior case in which the point now at issue was not fully debated"); *Hale v. Johnson,* 845 F.3d 224, 228 n.1 (6th Cir. 2016) ("[D]icta" "lack[ing] . . . analysis on [an] issue . . . is unpersuasive.").

Notably, *Nowroozpour* has no bearing on federal procedure. Whatever the recent traditions of Florida courts of general jurisdiction, this issue turns on a question of procedure among federal courts of limited jurisdiction. "In [a] diversity case," federal courts "apply federal procedural law." *J.P.F.D. Investment Corporation,* 769 Fed. App'x at 702 n.3.[28]

Another reason underlying the court's refusal below was that, despite *Suarez*, "'[a]ppraisal clauses are [still] treated similarly to arbitrations'" [R. 2327 (citing, among other cases, *Three Palms Pointe, Inc.*, 250 F.Supp.2d at 1362)]. But this misses the point of Empire's objection: this is a matter of federal procedure. Even if Florida law controlled, no aspect of appraisals travels under its Arbitration Code. Should this Court need to "make an *Erie* guess that the Florida Supreme Court would not apply [a] statute" here like the Arbitration Code, *cf. McMahan v. Toto*, 311 F.3d

---

[28] *See also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (refusing to compel appraisal on similar grounds); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (denying appraisal because diversity jurisdiction required application of federal procedural law); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (expressing similar concerns).

1077, 1080 (11th Cir. 2002), it has long ago done so. *Southern Flapjacks*. *See Columbia Cas. Co. v. Southern Flapjacks, Inc.*, 868 F.2d 1217, 1223 (11th Cir. 1989) ("The Florida Arbitration Code applies only to arbitration agreements, not to appraisals.").[29] Florida precedent has since validated *Southern Flapjacks*.

*Suarez* "held that the Florida Arbitration Code is not applicable to appraisal cases." *Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d 709, 712 (Fla. 3d DCA 2009). Since *Suarez*, Florida's appellate courts have continued to curb all reliance on the Code in enforcing appraisals. *See State Farm Fla. Ins. Co. v. Gonzalez*, 76 So. 3d 34, 37 (Fla. 3d DCA 2011) (rejecting "petition to confirm" appraisal award as if it were an arbitration award, and requiring suit for breach of contract instead) (*citing Florida Insurance Guaranty Ass'n v. Olympus Ass'n*, 34 So.3d 791 (Fla. 4th DCA 2010)); *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1230 (Fla. 3d DCA 2013) (reversing "confirmation" of appraisal award because "[t]he Florida Arbitration Code is not applicable to appraisal awards"); *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712 (reversing trial court's refusal, based on Arbitration Code, to apply deductibles and prior payments to appraisal award).

---

[29] Early precedent elsewhere deemed appraisals outside the scope of arbitration statutes. *See, e.g., City of Omaha v. Omaha Water Co.*, 218 U.S. 180, 192-99 (1910) (holding appraisal was not an arbitration); *Collins v. Collins*, 53 Eng. Rep. 916, 919 (1858) (same).

The trend is clear. For example, writing for the majority in an opinion before his ascension, Justice Canady expressly disapproved of *Three Palms Pointe's* refusal to allow the insurer to challenge coverage for elements of loss after appraisal. *Kennedy*, 890 So. 2d at 541. Every district with an opinion agrees with *Kennedy*. *See American Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, 306 So. 3d 1238, 1243 (Fla. 2d DCA 2020); *Williams v. Citizen Prop. Ins. Co.*, 285 So. 3d 334, 335 (Fla. 4th DCA 2019); *Safepoint Ins. Co. v. Hallet*, No. 5D20-206, 2021 WL 2599656, at *2 (Fla. 5th DCA, June 25, 2021); *Olympus Ass'n*, 34 So. 3d 791; *Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1229. As do most district court rulings in this circuit.[30]

Although this Court would "write[] in . . . disappearing ink" on the issue, *McMahan*, 311 F.3d at 1079, the writing in Florida is on the wall: "the analogy [to the Code] [i]s misplaced." *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712. Analogy is a tool of reasoning, not a source of power. An Article III court

---

[30] Although "federal district courts have divided as to whether . . . to follow *Three Palms Pointe* or . . . *Kennedy*," *Fouladi v. Geovera Specialty Ins. Co.*, No. 6:18-cv-326-Orl-40KRS, 2018 WL 3761039, at *6 n.4 (M.D. Fla. April 30, 2018), a growing majority of cases in this Circuit *expressly* side with *Kennedy. See Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, No. 07-20897-Civ-Ungaro, 2008 WL 11407210, at *1 n.1 (S.D. Fla. Apr. 21, 2008); *Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 05-14362-Civ, 2009 WL 790120, at *2-*3 (S.D. Fla. Mar. 24, 2009); *Jin Zhi Star Lt. LLC v. American Zurich Ins. Co.*, No. 08-61101-Civ-Moreno/Torres, 2011 WL 13110260, at *3-*4 (S.D. Fla. June 16, 2011); *Grove Towers Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-24199-Civ-Cooke/Goodman, 2020 WL 4561599, at *4 (S.D. Fla. June 9, 2020).

cannot exercise equitable powers outside Rule 65, anchored in mere reasoning. The Honorable Magistrate's conclusions that "Suarez did not . . . overturn Florida's prior policy and precedent" enforcing appraisals through motions to compel arbitration [R. 2265], and that courts "maintain[] the ability to compel appraisal outside of granting specific performance" [R. 2267] were unmoored from precedent.

The lower court also suggested that *Red Cross Line*, cited by Empire, supported compelling appraisal here [R. 2327]. This is incorrect. As explained above, *Red Cross Line* referred to the potential enforcement of appraisal through specific performance. 264 U.S. at 118-119, 121. But courts seldom did. Instead, they deemed a suit for breach of contract damages an adequate, if imperfect, remedy. *See Forbes*, 70 F.Supp.2d at 343 (courts rarely grant specific performance of appraisal given high burden).[31]

This is why courts often dismiss counts seeking to compel appraisal for failure to sufficiently allege the inadequacy of legal remedies. *See, e.g., Parkway Baptist Church, Inc.*, 2011 WL 13099891, at *3. It also why, in Florida, the amount of loss

---

[31] *See also Saba*, 159 Ohio St. at 248-249 (Hart, J., dissenting) (explaining common law refusal to specifically enforce appraisal); *Hepburn et al.*, 5 Cranch at 279 (specific performance a departure from common law); *Specific Performance of Contracts Containing A Provision to Arbitrate*, 31 Y.L.J. 670, 670-671 (1922) ("Equity will usually not grant specific performance of contracts for valuation or arbitration, even though the legal remedy is inadequate . . . . But exceptions to this rule are recognized.") (citing Fry, Specific Performance (4th ed. 1903) sec. 356; 5 Pomeroy, Equity Jurisprudence (4th ed. 1919) sec. 2180).

has been a triable issue despite the existence of an appraisal provision or even an award. *Cf. Lewis*, 10 So. at 302-303. The Florida Supreme Court "does not intentionally overrule itself sub silentio." *Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002). And mere passage of time does not render precedent any less instructive or binding.[32] The lower court's observation that no Eleventh Circuit or Florida appellate opinion exists on this issue of first impression is insufficient [*cf.* R. 2325]. The court even doubted that compelling appraisal could be "a procedural matter" [R. 2328 at n.3].[33]

Lastly, the lower court's novel practice has absurd and unfair consequences. In affording the same relief of compelling appraisal whether Creekside chose to plead it as specific performance or not, the court effectively allowed Creekside to *choose* between a higher and lower burden of proof to obtain the *same* thing. Nothing

---

[32] In Texas, for example, the Supreme Court only reviewed five appraisal cases between 1888 and 2009. *See* Ticer et al., *Appraisal in the New World Order*, *supra* at 1-2. Any desired change in the common law of appraisals—or specific performance—should be addressed by the Legislature, as it has been in every other state where a statutory motion to compel appraisal abrogated earlier common law.

[33] Should any aspect of this issue turn on a question of Florida law, Empire respectfully requests this Court to certify it to the Florida Supreme Court, given its state and circuit-wide impact. *See, e.g., Anderson v. Auto-Owners Ins. Co.*, 172 F.3d 767 (11th Cir. 1999) (certifying question involving insurance policy), *certified question answered by Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000); *Sun Ins. Office, Ltd. v. Clay*, 133 So. 2d 735, 742 (Fla. 1961)("It is now well established procedure for a federal court to abstain from deciding the merits of a case so as to afford the state courts a reasonable opportunity to construe a state statute involved in the case.").

comparable is done in other legal contexts, including cases involving specific performance. Insurance litigation should not be exceptional. If a party *can* compel appraisal through specific performance, then it *must* do so. It is the nature of the relief what triggers the procedural mechanisms procuring it, not the choice of vehicle that redefines the relief sought.

For example, motions for specific performance require "testimonial and documentary evidence, including expert testimony of the specialized nature of the contract subject matter that damages would not be a just and reasonable substitution for its loss." 5 BUS. & COM. LITIG. FED. CTS. § 49:79 (4th ed.2020). Courts must find "[t]hat the comparative benefit and harm to the parties if specific performance is granted favors the party bringing the action, by testimonial and documentary evidence." *Id.* This did not take place below. The fact that Florida courts may do something else does not justify importing that practice. *Cf., e.g., MaxLite, Inc. v. ATG Electronics, Inc.*, No. 15-1116, 2019 WL 3283077, at *3 (D. N.J. July 22, 2019) (refusing to enact "parallel procedure" tracking state "summary action" practice and instead evaluating preliminary injunction claim to compel payment of fees through Rule 56).

If a pleading or motion seeking to compel appraisal do not involve federal equity jurisdiction under Rule 65, or specific performance under Florida law, despite the labels used, then Empire is unsure of what kind of relief or process is involved.

Similarly situated parties—including insureds against whom appraisal is often sought—are no less uncertain. Just what power are Article III courts exercising when they mirror Florida state courts in granting these mere "motions to compel"?

Proper federal procedure in compelling appraisals should require satisfaction of Rule 65 and a district court's exercise of discretion in weighing the factors and tailoring any relief granted. *Cf.* Sturges, *supra* at 3 n.6 (recognizing courts must weigh injunctive factors and exercise discretion in compelling appraisal).[34] Any conflict between Florida law and Rule 65 is resolved in favor of the latter. *See Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 466 (M.D. Fla. 2022). A concise blueprint of what appraisal litigation should procedurally look like may be useful.[35]

---

[34] *See also* Amy Schmitz, *Refreshing Contractual Analysis of ADR Agreements by Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT. L. REV. 1, 2, 4 n.22 (2004) (arguing courts should not automatically compel specific performance of extra-judicial resolution agreements without balancing equitable factors and exercising discretion); *Georgia Advocacy Office v. Jackson*, 4 F.4th 1200, 1208 (11th Cir. 2021) (Rule 65 allows for tailoring of injunction); Samuel Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530, 557 (2016) (noting that under Rule 65 "court is not limited to saying merely 'perform the contract', and it may impose further conditions . . . as needed").

[35] Ordinarily, compelling appraisal should be sufficiently pleaded as specific performance and the amount of loss be excepted from any jury demand under Rule 38(c). This allows the insurer to raise equitable and other defenses. A motion to compel appraisal should require a showing under Rule 65. As argued below, it should also seek summary judgment on that relief as pleaded. The movant must meet the high burden for specific performance before appraisal can be ordered. If any award is not paid, then the movant (often the insured) may file a supplemental pleading alleging that the non-movant (often the insurer) has breached the policy by failing to make payment. *Cf. J.P.F.D. Investment Corp.*, 769 Fed. App'x at 705-706

## II.    Compelling Appraisal Absent Summary Judgment that Empire Breached the Provision Constituted a Grant of Unpled Relief Redressing an Un-adjudicated Wrong

The court erred in concluding that Creekside "need not move for summary judgment to compel appraisal" [R. 2326]. Again, all despite the acknowledged "persuasive value" of Empire's authorities [R. 2262]. In the absence of an adjudicated breach, Empire should not have been forced to perform on the contract.

First, "[s]pecific performance . . . is a remedy for breach." *Ostuw*, 2020 WL 6305105, at *3. This entails "a cause of action which requires proof the contract was breached.'" *Macom Technology Solutions Holdings, Inc. v. Ifineon Technologies AG*, 881 F.3d 1323, 1332 (Fed. Cir. 2018) (citation omitted). *Cf. also Anoushfar*, 2021 WL 4848073, at *3, *7 (specific performance claim logically depends on breach of contract count). Appraisal is often sought through summary judgment. *See, e.g., Jacobs*, 236 F.3d at 1285 (reviewing summary judgment order compelling

---

("If the parties cannot agree on the covered loss amount, they must undergo the contractual appraisal before [the insurer's] obligation to pay . . . ripens."). The parties may then continue litigation of coverage post-appraisal, as required by *Kennedy*. And the movant may even seek summary judgment on the amount owed, as allowed by *Mango Hill #6 Condo. Ass'n, Inc.*.

appraisal).[36] Creekside was required to defeat Empire's defenses. *See Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 (11th Cir. 1996).[37] It failed to do so.

Second, "[a]lthough" Creekside's motion "was styled as a motion to compel [appraisal] . . . it is essentially a motion for summary judgment." *J.W. Mariner Corp. v. Zurich American Ins. Co.*, No. 5:20-cv-143, 2021 WL 4958099, at *1 n.1 (N.D. Fla. July 7, 2021). *See also Great Lakes Ins. SE v. Concourse Plaza, A Condo. Ass'n, Inc.*, No. 21-cv-21873, 2022 WL 1681883, at *3 (S.D. Fla. May 26, 2022) (treating motion to compel appraisal as one for summary judgment, since it "will dispose of" entitlement to appraisal and counterclaim seeking it).[38] Federal courts elsewhere agree. *See, e.g., McCoy*, 189 F.Supp.3d at 900 (explaining that motion to compel

---

[36] *See also Pernas v. Scottsdale Ins. Co.*, No. 1:15-cv-21506, 2016 WL 471949, at *2 (S.D. Fla. Feb. 8, 2016); *Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, No. 10-61987, 2013 WL 1191413, at *2-*3 (S.D. Fla. Mar. 22, 2013); *People's Trust Ins. Co. v. Slavin*, No. 4D21-3025, 2022 WL 1021043, at *1 (Fla. 4th DCA April 6, 2022).

[37] *Cf., e.g., Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 602 (Fla. 4th DCA 2019) (Warner, J., dissenting) (explaining that, although plaintiff stated elements of specific performance, it "was not entitled to summary judgment . . . because it did not negate all of the affirmative defenses of [defendant]").

[38] See also *Indian Harbor Insurance Company v. International Studio Apartments, Inc.*, No. 09-60671-CIV-ALTONAGA/Brown, 2009 WL 10668754, at *3 (S.D. Fla. Sept. 22, 2009) (treating motion to compel appraisal as one for summary judgment); *Palmer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, No. 13-80741, 2014 WL 12461372, at *5 (S.D. Fla. Nov. 7, 2014) ("Plaintiff's Motion to Compel . . . Appraisal . . . is essentially [its] own motion for summary judgment on this issue.").

appraisal "seek[s] partial summary judgment on . . . claim that [insurer] has breached the Policy by refusing to participate in the appraisal process").[39]

Third, the lower court's reasons for refusing to require summary judgment are unpersuasive. For example, it noted that Empire's argument was previously rejected by other members of the court [R. 2325 n.2 (citing, among other cases, *Waterford Condo. Ass'n of Collier Cty., Inc.,* 2019 WL 3852731, at *2)]. But neither *Waterford* nor the other district court rulings relied on are persuasive.[40]

In *Waterford*, the court acknowledged that, where "[o]ne of the counts . . . [is] a demand for appraisal," courts have "treated a motion to compel appraisal as a request for summary judgment on that claim." 2019 WL 3852731, at *2 (citing *Int'l Studio Apartments, Inc.*, 2009 WL 10668574, at *3). Here, Creekside's complaint seeks relief compelling appraisal, albeit insufficiently, having pleaded it in its withdrawn declaratory judgment count [R. 299-300 (¶¶ 11, 15-18 (praying for "order

---

[39] *See also St. Panteleimon Russian Orthodox Church*, 2013 WL 6190400, at *3 (motion seeking appraisal functionally summary judgment motion seeking specific performance); *Battles, Inc.,* 2020 WL 6365513, at *4-*5 (court "declin[ing] to exercise its power [to grant a motion to compel appraisal] without a motion for summary judgment or an adjudication on the merits"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (same); *Battles, Inc.*, 2020 WL 6365513, at *5 (same).

[40] Empire has appealed many of those cases recently rejecting its argument. *See, e.g., Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136, 2022 WL 780950, at *2 (M.D. Fla. Mar. 15, 2022); *Positano Place at Naples III Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-183, 2022 WL 714810, at *2 (M.D. Fla. Mar. 10, 2022).

to comply with . . . appraisal")], as well as in its operative complaint's declaratory judgment and breach of contract counts [R. 402-404 (¶¶ 29(g)-(i) (seeking order compelling appraisal), 33 (praying for any "relief that this Court deems . . . appropriate" to redress Empire's alleged breach of the appraisal provision))]. The rationale of *Int'l Studio Apartments* applied. And the court failed to analyze the sufficiency of Creekside's pleading. That this procedural question has merit is evidenced by the lower court's own equivocation in first agreeing with Empire's argument only to subsequently change course, *sua sponte*, and without providing any analysis. *Compare Creekside*, 2020 WL 5973177, at *4, *with Creekside*, 2021 WL 2003007, at *1.

Regardless, *Waterford* incorrectly reasoned that what determines if summary judgment is necessary to compel appraisal is whether appraisal will decide if the amount appraised is owed. 2019 WL 3852731, at *2. Rather, what determines whether summary judgment is required is whether the movant is seeking an adjudication—partial or not—of a claim, defense, or affirmative relief that is a component of either. Fed. R. Civ. P. 56(a). If the amount of loss, once calculated by appraisers, may be the subject of summary judgment,[41] why is entitlement to compelling that calculation not also so appropriate? If this Court concludes that Creekside did not seek or frame the relief of appraisal in its complaint, then Empire's

---

[41] *Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1230.

38

predicament is all the worse: the court granted unpled relief to redress an un-adjudicated breach. As it did with specific performance, Creekside convinced the lower court that there should be a procedural carve-out for insurance cases when it comes to an insured's obtainment of relief outside of Rule 56. There is no basis for the exceptional treatment.

### III.    The District Court Refused Imparting Guidelines for Appraisal Based on the Erroneous Legal Conclusion that It Lacked Such Discretion

The lower court refused to consider or prescribe any of the reasonable guidelines proposed by Empire for the appraisal process, including the itemization of the award and the parties' access to all information relied on by the appraisers, incorrectly assuming that it lacked the power to do so [R. 2273, 2328]. Despite Empire's allusion to the court's power to fashion specific performance relief, its inherent authority, and due process, the court refused. This fell short of the "great care" that "must be taken to assure that the power of a court to require . . . action does not result in unwarranted harm to the defendant," *Alabama v. U.S. Army Corps of Engineers,* 424 F.3d 1117, 1127 (11th Cir. 2005).

First, a district court judge is required to exercise discretion in tailoring the specific performance of appraisal. *Cf.* Sturges, *supra* at 3 n.6 (recognizing courts must weigh injunctive factors and exercise discretion in compelling appraisal).[42]

---

[42] *See also* Amy Schmitz, *supra* at 4 n.22 (courts should not automatically compel specific performance of extra-judicial resolution agreements without balancing

Because the lower court failed to recognize that Creekside sought specific performance relief, it refused to exercise the kind of discretion attending the grant of such relief.

Second, a district court also has the discretion to impart reasonable instructions in compelling appraisal to safeguard the parties' due process and the efficiency of the proceedings. "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution[.]'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). Notably, "[t]hese powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (citation omitted).

Relatedly, "the Due Process Clause requires certain *minimum procedures* 'to ensure that [a property interest] is not arbitrarily abrogated.'" *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 859 (1977) (Stewart, J., concurring) (internal quotations and citation omitted) (emphasis added). "[T]hat minimum is any reasonable procedure appropriate to the circumstances which fairly

---

equitable factors and exercising discretion); *Jackson*, 4 F.4th at 1208 (Rule 65 allows for tailoring of injunction); Samuel Bray, *supra* at 557 (noting that under Rule 65 "court is not limited to saying merely 'perform the contract', and it may impose further conditions . . . as needed").

protects an individual from arbitrary action." *Burgess v. Miller*, 492 F.Supp. 1284, 1290 (N.D. Fla. 1980).

Governmental action mandating appraisal implicates due process. *See, e.g., Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*, 284 U.S. 151, 158 (1931) (upholding constitutionality of statute mandating insurance appraisals only if "procedure it adopts satisfies the constitutional requirements of reasonable notice and opportunity to be heard"). Judicial enforcement is no different. Thus, courts have long required appraisal proceedings to respect minimal due process despite their informality. *See, e.g., Providence Washington Ins. Co. v. Gulinson*, 215 P. 154, 155 (Col. 1923) (reversing appraisal award because "[a]rbitrators constitute a quasi court, and while no formalities are necessary, yet some of their duties and responsibilities are similar"), *approved by Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 52 (Col. 2019).[43] The same is true of Florida. *See, e.g., Lewis*, 10 So. at 302 (noting appraisal award not binding if "irregularity, unfairness, or fraud" shown) (relying on *Burchell v. Marsh*, 58 U.S. 344, 349 (1854)

---

[43] *See also St. Paul Fire & Marine Ins. Co. v. Walsenburg land & Development Co.*, 278 P. 602, 603 (Col. 1929) ("It is axiomatic that every man has a right to be heard before judgment; also that he may waive that right. We do not think this appraisal clause was such a waiver."); *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 220 N.W. 425, 426-27 (Minn. 1928) ("The duties of the board of appraisal are in the nature of common-law arbitration."); *Hozlock v. Donegal Companies/Donegal Mut. Ins. Co.*, 745 A.2d 1261, 1263 (Pa. Super. Ct. 2000) (appraisal judicially reviewed like common law arbitration).

(explaining that court will not set aside award "[i]f the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties")).

Federal courts elsewhere continue to exercise inherent powers to safeguard the efficiency of appraisal proceedings and the parties' due process. *See, e.g., Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F.Supp.3d 1150, 1155 (D. Colo. 2015) (imposing minimal guidelines pursuant to court's "inherent power 'to control and supervise its own proceedings'") (citing *United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986)).[44] Reasonable instructions "protect the integrity of the process[,]" "increase the likelihood of a valid appraisal award," and "allow the appraisal process to proceed in an orderly and efficient manner that conserves the Court's resources and minimizes the need for further involvement of the Court." *Id.* In *Summit Park*, the court imposed some of the guidelines requested by Empire

---

[44] *See also Villareal v. Owners Ins. Co.*, No. 16-cv-01862, 2016 WL 9735733, at *2 (D. Col. Dec. 1, 2016) (crafting appropriate guidelines for appraisal because "the briefings indicate that Court intervention is required and that it is necessary to impose guidelines governing the appraisal process"); *Am. Storage Centers v. Safeco Ins. Co. of Am.*, 651 F.Supp.2d 718, 720 (N.D. Ohio 2009) (reference to "lengthy Order" with "instructions for the conduct of the appraisal process"); *CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 275 (D. Del. 2000) (ordering and listing issues to be addressed by appraisers); *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.,* 981 F.Supp. 581, 607 (N.D. Iowa 1997) (parties may seek determination if intractable disputes arose over issues properly within scope of appraisal).

below. *Id.* at 1156-58 [*cf.* R. 2231-32, 2292-95, 2319-20]. Despite being presented with these authorities, the lower court below refused to consider them.

Third, lower court's reasons for refusing to exercise discretion in prescribing reasonable guidelines are unpersuasive. The reasonable instructions sought by Empire included: (1) that the award be broken down with line items, stating separately the value of damaged property or the amount of loss [R. 2231, 2295]; (2) that ACV amounts not include "matching" costs or Ordinance or Law ("O&L") expenses [R. 2231, 2294]; (3) that the appraisers not appraise un-appraisable amounts [R. 2231-32]; and (4) the same guidelines from *Summit Park* regarding what information the appraisers rely on, when they deliberate, whom they speak to, and how long the process takes [R. 2292-93]. The court declined to consider these.

It noted that appraisal must take place "in accordance with [the Policy's] provisions," and adopted the Honorable Magistrate's reasoning for declining any instructions [R. 2328]. Without further analysis, the court concluded that Empire may not "repudiate the terms of the policy" [R. 2328-29]. The Honorable Magistrate, in turn, reasoned that, unless Empire could quote specific Policy provisions expressly providing for the requested instructions, entertaining and imposing them would necessarily amount to "rewriting" the Policy [R. 2272]. In support, he only relied on a pair of district court rulings from other members of the bench [R. 2272-73 (citing *Coral Reef Metro, LLC v. Scottsdale Ins. Co.*, No. 2:18-cv-460, 2019 WL

43

721286, at *3 (M.D. Fla. Jan. 30, 2019), and *Waterford*, 2019 WL 3852731, at *3)]. Yet, *Coral Reef* and *Waterford* are not binding. *Harris v. Equifax Information Services, LLC,* No. 8:20-cv-1770, 2020 WL 6545977, at *2 n.3 (M.D. Fla. Nov. 6, 2020) ("[F]ederal district judges . . . lack authority to render . . . decisions binding other judges, even members of the same court.").

Nor are *Coral Reef* and *Waterford* analogous. They did not involve the exact guidelines, arguments, and authorities presented by Empire in this case. Critically, neither relied on binding or persuasive precedent for its result. For example, *Coral Reef* relied exclusively on *Intervest Constr. Of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494 (Fla. 2014). *Coral Reef Metro, LLC*, 2019 WL 721286, at * 3. But *Intervest Constr.* did not involve an appraisal award or consider the question posed below. Instead, it merely stood for the general proposition against judicial rewriting of contracts. *Intervest Constr. Of Jax, Inc.*, 133 So. 3d at 497. *Coral Reef* recognized other district court rulings prescribing similar instructions. 2019 WL 721286, at * 3.

And *Waterford* fares no better. It solely relied on a district court's identical, unelaborated ruling. *Waterford*, 2019 WL 3852731, at *3 (citing *ABC Univ. Shops, LLC v. Scottsdale Ins. Co.*, No. 18-CV-60562, 2018 WL 6267943, at *2 (S.D. Fla. Nov. 30, 2018)). But the *ABC Univ. Shops* court relied only on yet another district court ruling, *Vista View Apartments, Ltd. v. Chubb Custom Ins. Co.*, No. 08-22772,

2009 WL 10669062 (S.D. Fla. July 6, 2009), which, in turn, relied on no authority whatsoever. *Vista View Apartments, Ltd.*, 2009 WL 10669062, at *2.

Nor is the discernible rationale of *Coral Reef*, *Waterford*, and *ABC Univ. Shops* persuasive. These all denied itemization of amounts in the appraisal award because "the policy . . . does not require" such a delineation, *ABC Univ. Shops*, 2018 WL 6267943, at *2, and requiring it "will . . . rewrite the policy." *Waterford*, 2019 WL 3852731, at *3. This is incorrect. Federal courts routinely require such instructions as the itemization of an appraisal award. *See*, *e.g., Bonafonte v. Lexington Ins. Co.*, No. 08-cv-21062-CIV, 2008 WL 2705437, *2 (S.D. Fla. July 9, 2008).[45]

As the *Bonafonte* court explained, "[t]his is because . . . the question of whether a particular damage claim is covered by a policy is a question for the court to determine," and "if an appraiser uses a detailed line-item appraisal form, a court can readily identify any coverage issues that arise . . . and resolve these without

---

[45] *See also Baldwin Realty Grp. Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785, 2018 WL 4381206, at *6 (M.D. Fla. Sept. 6, 2018) ("Courts have found that a detailed line-item appraisal streamlines and allows the court to more easily assess coverage disputes."); *McPhillips v. Scottsdale Ins. Co.*, 2018 WL 3805865, at *3 (M.D. Fla. Aug. 10, 2018) ("A detailed line-item appraisal has been found to streamline the litigation process[.]"); *Triton Renovation, Inc. v. Empire Indemnity Ins. Co.*, No. 2:20-cv-432-JLB-NPM, 2021 WL 2291363, at *5 (M.D. Fla. June 4, 2021) ("[A] lump-sum appraisal award presenting nothing more than a single figure for the entire 25-building condominium complex would not be appropriate.").

having to try and decipher what value the appraiser assigned for a particular type of damage." *Id.* The only Florida precedent on this question approved of *Bonafonte*. *See Olympus Ass'n, Inc.*, 34 So. 3d at 796 n.1 (explaining that "[w]hen an appraiser uses a line-item appraisal form . . . 'a court can readily identify any coverage issues'"). Thus, the lower court's contrary reasoning rings contrary to precedent.

Federal courts elsewhere also tailor their orders compelling appraisal to the reasonable requests made by parties with regard to the appraisal process or the ensuing award. *See, e.g., Wexler v. Chubb Nat'l Ins. Co.*, 2022 WL 888944, at *6 (N.D. Ill. Mar. 25, 2022) (requiring award to "be sufficiently itemized . . . to enable the parties and the Court to identify the amount of loss for all coverage categories").[46]

Empire's itemization request is all the more reasonable where, as here, it is undisputed that Creekside has not actually spent on completed repairs or replacements what it seeks in reimbursement, *Nalcrest Foundation, Inc. v. Landmark American Ins. Co.*, 2018 WL 4293147, at *8 (M.D. Fla. July 27, 2018), and there are twenty seven buildings involved. *Triton Renovation, Inc.*, 2021 WL 2291363, at *5. Moreover, by way of analogy, a sworn proof of loss quantifying a claim must be itemized. *SafePoint Ins. Co. v. Sousa*, 275 So. 3d 684, 686 (Fla. 3d

---

[46] *See also Federal Ins. Co. v. Anderson*, No. 18-cv-06920, 2019 WL 8128570, at *6 (N.D. Cal. Sept. 27, 2019) (same).

DCA 2019). Certainly, an appraisal award should not be less specific than a sworn proof of loss.

Itemization and other requirements are also supported by the Policy's plain language and purpose as a whole. The standard appraisal provision in this Policy "leave[s] much to the imagination . . . with regard to . . . procedure." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 69. But enough is reasonably implied. The provision states that appraisal will be of "the loss," and that the appraisers "will state separately the value of the property and the amount of loss" [R. 158]. Under the Policy, the payable value of lost or damaged property must be "in accordance with" the valuation provision [R. 152]. That provision, in turn, separately outlines ACV, RCV, and other expenses required by law as the kinds of value at play in the Policy [R. 248]. Even if undefined, ACV is generally read as meaning replacement cost minus depreciation. *Sos v. State Farm Mutual Auto. Ins. Co.*, 396 F.Supp.3d 1074, 1079 (M.D. Fla. 2019).[47] RCV is elsewhere described as replacing the valuation provision, requiring an amount actually spent on completed repairs [R. 450]. The Policy also requires appraisers to be "competent and impartial" [R. 158].

---

[47] *See also Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) ("[D]epreciation is not excluded from replacement cost coverage, whereas it generally is excluded from actual cash value."); *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1279 (11th Cir. 2015) (noting undefined ACV deducts depreciation value based on *Trinidad*). ACV does not include matching costs. *Vasquez v. Citizens Property Ins. Corp.*, 304 So. 3d 1280, 1283 (Fla. 3d DCA 2020).

These textual provisions sufficiently imply reasonable itemization. "Where there are numerous articles of different kinds and quality to be appraised, it is obvious that an appraisement to be of value must be founded upon an individual appraisal of the various articles." *Ridell v. Rochester German Ins. Co. of N.Y.*, 89 A. 833, 835 (R.I. 1914). Although "[t]here [be] no provision in the agreement expressly requiring an itemized appraisal," "its implications" may "show that an itemized or individual appraisement was contemplated thereby." *Id.*

Nationwide, it "is usually crystal clear . . . that the mission . . . is to determine the actual cash value . . . and the amount of loss," and it "is generally sacrosanct that the values to be appraised are as to each item of loss claimed . . . in a proof of loss." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 69. It is the separate items of loss claimed what "logically and legally . . . is to be . . . appraised." *Id.* at 70. The same goes for other guidelines required by due process or the integrity of the process: certain "procedures . . . help to ensure 'due process and fair notice' and are . . . supported by the policy language requiring the appraisers to be 'competent and impartial.'" *Summit Park Townhome Ass'n*, 129 F.Supp.3d at 1152.

Lastly, the Policy's language also supports Empire's request that neither RCV nor O&L be appraised. Where, as here, the amounts sought in RCV and O&L benefits have not been "actually spent" on completed repairs or incurred, Empire cannot owe such benefits. *Metal Products Co., LLC v. Ohio Security Ins. Co.*, No.

21-11612, 2022 WL 104618, at *2 (11th Cir. Jan. 11, 2022) (citing *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007)); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 Fed. App'x 659, 665 (11th Cir. 2010). Here, calculating RCV is "a purely speculative appraisal of damages as to which it may be contended no liability at all exists." *New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*, 156 So. 695, 696 (Fla. 1934).

Appraisal is a mechanism to liquidate an unspecified amount of loss in the Policy. *Id.* There is nothing to liquidate in terms of the RCV or O&L, absent alleged and proven completed repairs and incurred expenses. Creekside's RCV and O&L claims are not even ripe under Article III. *See Executive Plaza, LLC v. Peerless Ins. Co.*, No. 09-1976, 2010 WL 11632677, at *3 (E.D. N.Y. Feb. 8, 2010) (dismissing RCV claim for lack of repairs or replacements completed and paid for); *Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 19-80959-civ, 2022 WL 873998, at *4 (S.D. Fla. Mar. 24, 2022) (dismissing O&L claim on eve of trial *despite* appraisal award calculating it for lack of actual loss under the Policy); *Diamond Lake Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-547, 2021 WL 6118076, at *3 (M.D. Fla. Dec. 27, 2021) (dismissing O&L claim for failure to complete and pay for repairs). Consequently, these claims are not appraisable. *See Jossfolk v. United Property & Cas. Ins. Co.*, 110 So. 3d 110, 111 (Fla. 4th DCA 2013) ("[P]rior [appraisal] proceeding had not appraised Ordinance and Law

coverage, *nor could it because none had been incurred at the time of the appraisal*.")
(emphasis added).[48]

In sum, despite its authority to impart them, the court below refused to even consider prescribing any of Empire's requested guidelines, whether as a matter of tailoring specific performance, inherent powers, or due process. The court thought it lacked such power, and that exercising it would necessarily rewrite the Policy. Respectfully, this legal conclusion was incorrect. Even if not *all*, at least *some* of Empire's requests were reasonable under the Policy and facts of this case. A determination the lower court did have the power to make without "rewriting" the Policy.

---

[48] And, after appraisal, the lower court will disregard any such calculations absent completed repairs or incurred expenses. *See Ford v. American Security Ins. Co.*, No. 1:19-cv-20223-JLK, 2019 WL 6609239, at *3 (S.D. Fla. Dec. 5, 2019) (reducing appraisal award by subtracting prior payments and on basis of evidence showing actual expenses, granting summary judgment to insurer, and denying insured's motion to confirm appraisal award); *Allen v. Amica Mutual Ins. Co.*, No. 1:12-cv-49, 2013 WL 11927705, at *6 (N.D. Ga. Feb. 28, 2013) (RCV component of appraisal award not owed in absence of completed repairs).

# CONCLUSION

Empire respectfully asks this Court to reverse the Honorable District Court

Judge's appraisal order and remand for further proceedings.

BUTLER WEIHMULLER KATZ CRAIG LLP

*s/Christian Lee Gonzalez-Rivera*
J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
CHRISTIAN GONZÁLEZ-RIVERA, ESQ.
Florida Bar No. 1020707
cgonzalez-rivera@butler.lega1
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Counsel for Empire Indemnity Insurance Company*

## CERTIFICATE OF COMPLIANCE

Appellants brief complies with the word and page limits of the Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding all parts of the document exempted by rule 32(f), this document contains 12,142 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in size 14 font.


/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

52

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

on all counsel of record on June 15, 2022, via the CM/ECF system.


/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA